BRADY v. SOUTH SHORE TRACTION CO.

In re BRADY et al.

(District Court, E. D. New York. July 1, 1912.)

1. RECEIVERS (§ 73*)—INTERFERENCE WITH PROPERTY—INJUNCTION—STREET RAILROADS.

Where receivers of a street railroad company operated cars on tracks over a bridge belonging to a city under a franchise granted by the city, and a competing company operating its cars over the bridge advertised that it would establish by separate cars a three-cent fare service over the bridge, which the receivers claimed would seriously interfere with the property in their control, the court in which the receivership was pending had jurisdiction to prevent such action by a restraining order or injunction in the receivership action, it appearing that such competing company had not complied with the public service law so as to entitle it to maintain a through service over the bridge.

[Ed. Note.—For other cases, see Receivers, Cent. Dig. § 131; Dec. Dig. § 73.*]

2. COURTS (§ 268*)—JURISDICTION—TERRITORY—OPERATION OF RAILROADS.

Where receivers of a street railroad operating in the eastern district of New York complained of a particular operation of cars by a competing company as irreparably injuring the property in the hands of such receivers, which operation was continuous and partly within the district, and it was not susceptible of territorial separation, the court in

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

that district had jurisdiction of a suit to restrain such competing company's acts, though a large part thereof were done in another district.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 806, 807, 812; Dec. Dig. § 268.*

Jurisdiction as affected by possession of the subject-matter, see note to Adams v. Mercantile Trust Co., 15 C. C. A. 6.]

3. STREET RAILROADS (§ 30*)—FRANCHISE—RECEIVERS—COMPETING SERVICE.

A traction company in the hands of receivers had obtained a franchise from the city to maintain a shuttle service over tracks on a bridge owned by the city, the franchise indicating that the city considered such service as distinct from the general right to operate cars over the bridge with transfer privileges at the termini. Defendant, having obtained a franchise to operate cars on certain streets, also obtained a license to run its cars over the bridge tracks on an express contract with the city that the fare should not be more than five cents, and that transfers should be furnished at the termini. Held, that such license plainly contemplated that defendant should not inaugurate a pure shuttle service in competition with the receivers, and defendant having advertised that it would run separate cars over the bridge without transfers for three-cent fare, without having received the approval of the Public Service Commission covering such service, and without having given the statutory notice of its plans, it was a trespasser and subject to an injunction at the instance of the receivers.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. § 47; Dec. Dig. § 30.*]

In Equity. Suit by Paul T. Brady against the South Shore Traction Company. In the matter of the application of Paul T. Brady and Willard V. King, as receivers of the South Shore Traction Company, for an order restraining the Third Avenue Bridge Company, its lessees, etc., from operating certain cars over the Queensboro Bridge, in competition with petitioners, for a three-cent fare. Motion to continue the restraining order granted, and issues set down for further proof, or referred.

Gifford, Hobbs & Beard, of New York City (Arthur C. Hume, of New York City, of counsel), for petitioners.

Evarts, Choate & Sherman, of New York City (Herbert J. Bickford, of New York City, of counsel), for respondent Third Ave. Bridge Co.

CHATFIELD, District Judge. This court has appointed receivers of the South Shore Traction Company in the present action, who are operating cars over what is known as the Queensboro Bridge, for a three-cent fare. The South Shore Traction Company has franchises extending over this bridge and further out into Long Island, but the present question has nothing to do with anything except the cars operated on this bridge, in what is known as a shuttle service.

The Third Avenue Bridge Company, according to the papers, has also obtained from the city of New York the right to operate cars in Manhattan and over the Queensboro Bridge upon the same tracks as those used by the South Shore Traction Company. These tracks belong to the city of New York, and the franchise or license to both companies is to use these tracks for the purposes granted by the city.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The Third Avenue Bridge Company, in its contract with the city, was given the right to operate cars over the bridge and to Third Avenue, New York, and there to connect with other companies of the elevated or surface system, and to furnish transfers at these points. It obtained its franchise, having organized under the Railway Law of the state of New York, and received from the Public Service Commission the certificates of approval required by the railroad law of the state. But certain objections are made to the validity of these applications, and of the rights claimed thereunder by the Third Avenue Bridge Company, and these objections will be considered later.

The suit in which the receivers were appointed was a creditors' action in equity. The receivers have continued by order of this court the operation of cars upon this bridge, and have succeeded in paying the expenses of that operation and the expenses of the receivership, but have not received sufficient return to indicate that a three-cent or shuttle car traffic over this bridge can do more than to furnish a fair return for the expenditure. In other words, there is no large profit, or no profit at all, to the South Shore Traction Company, after the expenses of the road's operation are met; so that the advantage to the South Shore Traction Company is a protection of its franchises, and the advantage of maintaining a road in operation. The Third Avenue Bridge Company announced during the month of April, 1912, that upon the 21st day of April, 1912, it would institute a three-cent fare service, by separate cars, from Third Avenue, New York, to the plaza in Long Island City—that is, at the eastern end of the Queensboro Bridge—and that no transfers would be received or given. This service would duplicate that furnished by the receivers of the South Shore Traction Company, except for the block between Second and Third avenues in New York as the shuttle car service of the receivers terminates at Second avenue, or at the western plaza terminus of the bridge. Under these circumstances the receivers applied to this court for an injunction restraining the Third Avenue Bridge Company from instituting the service advertised, and a temporary restraining order was granted until the motion for an injunction could be heard. This restraining order has been in effect and the matter adjourned from time to time. The Third Avenue Bridge Company has now answered the application for injunction by raising several objections, not only controverting and contradicting allegations in the petition, but also, and notwithstanding these denials, claiming that this court has no jurisdiction either to entertain the application for this injunction, or to make any order with respect thereto.

The first ground of opposition to an exercise of jurisdiction by this court is that the matter should not be considered as an incident to the present equity action, nor taken up on motion, but that it can only be considered by a bill in equity, and that the United States District Court as such has no jurisdiction. The Third Avenue Bridge Company cites such cases as N. Y. & Harlem R. Co. v. Forty-Second St., etc., R. R. Co., 50 Barb. (N. Y.) 285, Wheaton v. Daily Telegraph Co., 124 Fed. 61, 59 C. C. A. 427, Horn v. Pere Marquette R. Co. et al. (C. C.) 151 Fed. 626, in support of this contention; and it may

be assumed that the United States court could have no jurisdiction, inasmuch as this is not a proceeding in bankruptcy, unless the acts of its officers, namely, the receivers, and the property in the custody of the court, are being interfered with, so that the authority of the court itself is attacked, and an injunction order may be rendered necessary to uphold the authority of the court in the administration of the property under its control.

[1] The receivers are in possession of certain rights obtained from the city of New York, and in so far as such intangible rights can be said to be possessed, these rights as a whole are held by the receivers of this court, and any interference with their action is interference with the action of the court itself. The court, therefore, may, by restraining order or injunction, prevent interference with the property of the South Shore Traction Company; that is, the South Shore Traction Company's franchise. But the Third Avenue Bridge Company replies to this that no interference with the exercise of the franchise of the South Shore Traction Company is anticipated. That inasmuch as the tracks belong to the city of New York, and the right to use those tracks can be granted under the laws of the state, the South Shore Traction Company and its receivers have no ground for objection, if such right to use the tracks is legally given to other parties, and that the question of illegality cannot be raised herein.

If this contention is correct, it must follow that this court has no jurisdiction to protect the franchises of the South Shore Traction Company, nor the exercise of those franchises by the receivers, unless the operations of the Third Avenue Bridge Company go so far as to prevent the receivers from running their own cars and carrying on their own operations. But, on the other hand, the position taken by the receivers is not that of a claimant to title or right of possession as to any of the property or franchise rights of the Third Avenue Bridge Company. Hence a determination of whether the receivers are entitled to an injunction would not be a determination of their right to property in the possession of other parties under a claim of title. The cases cited by the Third Avenue Bridge Company, such as Wheaton v. Daily Telegraph Co., supra, have to do with an attempt by the receivers to obtain possession of property in the possession of their opponents, and claimed by the opponents, and such claim of title must be litigated in a plenary suit. This is the law both of equity and bankruptcy, and its application in bankruptcy is well known. But the receivers have a right in the primary suit to prevent irreparable injury to their property by any one who upon the record has not a right to inflict that injury. They have the right to prevent an act by any one which will interfere with the possession or value of the property that they are administering as receivers, where the record or rights of the party causing the injury show on their face that they have not a legal right to do what they are attempting to do.

It is pointed out by the Third Avenue Bridge Company that the right to operate tracks in a street is a franchise, while the right to run the cars over the city's property or tracks on the bridge is a mere license, and that the Third Avenue Bridge Company's franchise in the

streets at the western end of the bridge is distinct and separate from the license alleged to have been given to them by the city to run cars over the bridge. They argue from this that the position of the receivers in attempting to prevent the exercise of the license to run cars over the bridge by alleging invalidity with respect to the franchise in the streets—that is, at points beyond where the receivers come in competition with their operation—is of no avail, for the reason that the receivers have no right to call in question the Third Avenue Bridge Company's operation of cars in the streets of New York, and that this can be done only by the public; that is, the city, or a taxpayer, or the state. Long Acre E. L. & P. Co., 188 N. Y. 361, 80 N. E. 1101; City of New York v. Bryan, 196 N. Y. 158, 89 N. E. 467.

It is unnecessary for us to consider whether or not the Third Avenue Bridge Company might operate cars around the block between Second and Third avenues in New York, if they did not attempt to cross the bridge, nor are we concerned with the way in which the Bridge Company's cars proceed after leaving the plaza in Manhattan. The receivers' contention is based upon the attempt upon the part of the Bridge Company to operate a continuous trip over the bridge and over a route in Manhattan; and so long as the Bridge Company attempts to use this continuous trip, involving the passage over the bridge, their acts so affect the property in the possession of the receivers that, if this court had jurisdiction to consider the question at all, it could certainly consider whether or not the operation, as a complete schedule, is legal upon the face of the record.

[2] It is also apparent that the jurisdiction of this court, extending only over the Eastern District of New York, cannot extend to the particular acts, nor the operations of the particular tracks in the Borough of Manhattan, in the Southern District of New York. But, again, the fact that the trip outlined by the Bridge Company's intended plan is indivisible and extends into this district confers jurisdiction to consider whether that trip should be allowed. An answer to this objection would seem to be that any injunction from this court would not undertake to prevent the Bridge Company from operating the tracks or cars without the district, but would cover an operation by the Bridge Company into this district. If the service as a whole depends upon an invalid contract with the city, or an invalid franchise, and if the continuous operation cannot be separated, then it should be considered from the standpoint of validity of the necessary component parts, and this court has jurisdiction in effect to prevent the whole, so long as it is carried out partially within the geographical limits of this district. Whether or not the Bridge Company can remedy its irregular procedure in failing to advertise its rates and service, so as to comply with the requirements of the Public Service Law, and whether or not the Bridge Company can support its right to a franchise in the streets of Manhattan, over the route as finally adopted, will not determine this question. The provisions of the Public Service Law are categorical in terms, and compliance therewith is made mandatory, unless the Commission grants exemption. A certificate of necessity for through service should not be used for

197 F.—43

an entirely different purpose, without strict compliance with the laws giving supervision or power of regulation to a Public Service Commission. If the law has not been observed, then an action to stop the use of the cars could be brought by the proper parties to prevent operation in violation of the regulative statute, and with such action we are not concerned, nor can this court impose penalty. But if the Bridge Company should take possession of property of the receivers, or interfere with their use of that property, and if the Bridge Company had failed to comply with the Public Service Law, there would certainly be ground enough for this court to prevent (until the mandatory statutory requirements have been met) such irreparable injury to property within its control, and such disregard of its rights to exercise jurisdiction. To hold otherwise would be sustaining a taking of property without compensation or due process of law for the purposes of the Bridge Company, which is illegal, whether by government or individual, and which this court could not allow, when affecting its own control, even for the purpose of allowing a test suit to be maintained to avoid a decision by itself.

As to the objection to the validity of the franchise itself, through the fact that the change of route was not covered by an amended certificate of incorporation, until after an application had been made to the board of estimate and apportionment for the franchise, there may be considerable doubt. Such cases as Matter of N. Y. L. & W. R. Co., 88 N. Y. 279, and N. Y. & L. I. R. Co. v. O'Brien, 121 App. Div. 819, 106 N. Y. Supp. 909, seem to indicate that invalidity attaches only to a franchise which the company has not provided for, and which it is not legally able to receive at the time it is granted, and that such invalidity will not follow the anticipatory irregularity of premature preparation for a somewhat different route. The case of the Steinway Tunnel, N. Y. & L. I. R. Co. v. O'Brien, supra, does not seem to be to the contrary, but there is at least doubt enough upon the matter so that an injunction should not issue for this cause alone.

[3] But the most serious legal objection to the proposed action by the Bridge Company is in the opinion of this court apparent upon the face of the contract by the Bridge Company with the city of New York. It has obtained a franchise to operate cars on certain streets, and a license to run its cars over the bridge, upon an express contract that the fare shall not be more than five cents, and that transfers shall be furnished at the termini named. This plainly contemplates that a pure shuttle service shall not be instituted, and, inasmuch as the South Shore Traction Company has obtained the apparent right to maintain the shuttle service, it must be held that the city considered this shuttle service as something distinct from the general right to operate cars between points in Manhattan and points in Queens, with transfer privileges for distribution at the termini. If the Bridge Company has not the right to institute a shuttle service, and if it has not received an approval of the Public Service Commission covering such service, and if it has not given statutory notice of its plans, the court can see no reason why, upon the record itself,

it should not be held that the Bridge Company is not in the position of a party in possession under claim of title, but to be rather that of an apparent wrongdoer or trespasser, who, by his trespass, might accomplish the same result as the work being done by the receivers, but which would completely destroy the value of the property in their possession. Such a result, it would seem, is within the power of a court of equity, which is responsible for the property in the possession of the receivers, and for their acts, to prevent; and no controversy is raised by the record which should prevent a continuation of the restraining order until the Bridge Company can come into court with the statutes complied with, or with an apparent right to proceed.

As to the objection which is made by the Bridge Company that the receivers are not in a position to ask relief in equity, because of the alleged abandonment or loss of their own franchise, it need only be said that the charge is contradicted by the receivers. Any such issue can be disposed of upon proof, or by reference upon this application, and, until this court as a court of equity can see that the petitioners do not come to it with clean hands, the temporary stay should continue and the injunction asked for be granted.

The motion, therefore, to continue the restraining order will be granted, and any issues presented by the answer, which are not disposed of by the rulings upon the present motion, will be set down for further proof or referred.