**GUARANTY TRUST CO. OF NEW YORK v. FENTRESS et al., and five other cases.**

Nos. 4793–4798.

Circuit Court of Appeals, Seventh Circuit.

Oct. 17, 1932.

330

Horace Kent Tenney and S. Ashley Guthrie, both of Chicago, Ill., for appellants.

Edwin H. Cassels and William S. Warfield III, both of Chicago, Ill., Lawrence T. Allen and Everett L. Dalbey, both of Danville, Ill., and Robert B. Johnstone, of Chicago, Ill., for receivers Calvin Fentress and George A. Cooke.

Sidney S. Gorham, of Chicago, Ill., for Howard Cherry.

William L. Latimer, of Chicago, Ill., for Insull Utility Investments.

Edwin M. Ashcraft, Jr., Carroll J. Lord, and Russell F. Locke, all of Chicago, Ill., for receivers Raymond F. McNally and Patrick J. Lucey.

John E. MacLeish and Walter S. Underwood, both of Chicago, Ill., for Frank B. Schoeneman.

Before EVANS and SPARKS, Circuit Judges, and FITZHENRY, District Judge.

EVANS, Circuit Judge (after stating the facts as above).

Each of the two original suits was brought for the avowed purpose of obtaining the appointment of receivers, who in turn were to protect the property from loss through sale under the present unfavorable conditions, which are alleged to be abnormal. The Insull Utility Investments, Inc., it appears, was a corporation, commonly described as a holding company, organized for the purpose of speculating in stocks, chiefly utility, issued by companies which were controlled or manipulated by a group of men in Chicago headed by one Samuel Insull. Generally speaking, there were four companies whose securities were thus acquired: Commonwealth Edison Company, Public Service Company of Northern Illinois, The Peoples Gas Light and Coke Company, and the Middle West Utilities Company. The latter was itself a holding company.

The stock of the Insull Utility Investments, Inc. consisted of 60,000 shares of $5.50 Prior Preferred Stock without par value, 40,000 shares of Preferred Stock 1st Series without par value, 450,000 shares of Preferred Stock 2nd Series, and 3,636,622 shares of Common Stock without par value. It is inferable from the complaint that this stock is valueless and never will be of value because of the existence of outstanding funded indebtedness consisting of $2,469,000 of 5% Gold Debentures, Series A, due January 1, 1949, $55,256,000 of Ten Year 6% Gold Debentures, Series B, due January 1, 1940, and $45,000,000 of other notes. These debentures were unloaded on the public in prosperous times and were outstanding at the time of the application for the appointment of a receiver. A petition in bankruptcy has been filed against this company, which is insolvent.

The capital set-up of the Corporation Securities Co. was as follows: 1,000,000 shares of Prior Preferred Stock; 1,000,000 shares of Preferred Stock; and 6,000,000 shares of Common Stock. 4,569,019 shares of the common stock and 742,019 shares of the preferred stock are outstanding. The inference is strong that this stock is valueless because of the outstanding funded indebtedness of $24,033,000, represented by 5% Serial Gold Notes, and the existence of about $26,000,000 of notes payable.

This company too was engaged in speculating in the stock of the above-named four companies, controlled by the same group of individuals and headed by the same Samuel Insull.

The plaintiff in each case is the holder of five one thousand dollar notes or debentures.

Notwithstanding the outstanding indebtedness represented by gold notes and debentures, the officers in charge of the Insull Utility Investments, Inc. and of the Corporation Securities Co. borrowed large sums of money from various banks and deposited the securities which they had purchased out of the proceeds of the sale of stock, the gold notes, and the said debentures as collateral for such loans. As the securities fell in price and as the loans increased, a larger percentage of the

holdings of the two companies was thus pledged as collateral with said banks. It appears that practically all of the assets of both corporations have been thus hypothecated, and yet the market value of the pledged securities when the injunctional orders were entered was insufficient to cover the indebtedness to the banks. The stock, the gold notes, and the debentures are thus left with no securities to give them value.

It is alleged in the bill as the sole basis for the appointment of the receiver, and is urged here in support of the orders appealed from, that the present market value of the securities is such that great sacrifices will occur if the collateral be sold at this time. As the assets were all pledged and as the market value of the securities was less than the indebtedness, the real purpose of the litigation was to prevent the sale of the securities until a better price could be obtained.

Material parts of the injunctional order are set forth in the margin.[1] A similar order was entered in the other cause.

The orders granting the injunctions were entered upon the verified petitions of the receivers, but without oral testimony to support them. In these petitions, the receivers alleged that the Corporation Securities Co. and the Insull Utility Investments, Inc. had made "large loans of money from various banks located in the city of New York, New York, and pledged as collateral to secure such loans, large amounts and blocks of the stocks, bonds and other securities * * * belonging" either to said Corporation Securities Co. or to the Insull Utility Investments, Inc. They further alleged that "the stocks,

[1] "Comes now * * * receivers in the above entitled matter, and * * * show * * * that Corporation Securities Co. of Chicago has, before the appointment of the receivers * * * made loans of large sums of money * * * (from) various banks located in the City of New York, New York, and has pledged with the said bank various * * * securities as collateral, and It Appearing that such * * * securities so pledged as collateral have a certain market value as determined by market quotations of various Stock Exchanges located in the United States * * * but that such market value is not a fair, actual and intrinsic value of such * * * securities; and

"It Appearing Further that the said banks, holding such collateral security, have published notice of their intention to sell such collateral security at public auction; and

"It Appearing that the Corporation Securities Co. of Chicago, and its receivers, have an interest or equity in and to said * * * securities so pledged with the various banks, which will be forever lost if such * * * securities are sold at the present time, and that the Corporation Securities Co. of Chicago, its creditors and receivers, will suffer irreparable loss in the event of such sale;

"It Is Hereby Ordered that Central Hanover Bank and Trust Company be, and it is hereby, enjoined and restrained from selling or in any manner disposing of the following securities, namely: "102,312 shares of the common stock without par value of Middle West Utilities Company; "17,925 shares of the capital stock of Commonwealth Edison Company, of the par value of $100.00 Each; "2,421 shares of the common stock of Public Service Company of Northern Illinois, of the par value of $100.00 each; "8,751 shares of the common stock of Public Service Company of Northern Illinois, without par value; "18,729 shares of the capital stock of The Peoples Gas Light and Coke Company, of the par value of $100.00 each; heretofore pledged with it by Corporation Securities Co. of Chicago, together with any and all

other stocks, bonds or securities heretofore pledged to Central Hanover Bank and Trust Company, by Corporation Securities Co. of Chicago.

"It Is Further Ordered that the Guaranty Trust Company of New York be, and it is hereby, enjoined and restrained from selling or in any manner disposing of the following securities, namely: "2,093 shares of the capital stock of Commonwealth Edison Company, of the par value of $100.00 each; "2,068 shares of the capital stock of The Peoples Gas Light and Coke Company, of the par value of $100.00 each; "1,176 shares of no par value of the common stock of Public Service Company of Northern Illinois; heretofore pledged with it by Corporation Securities Co. of Chicago, together with any and all other stocks, bonds or securities heretofore pledged to Guaranty Trust Company of New York, by Corporation Securities Co. of Chicago; and

"It Is Further Ordered that The Chase National Bank of the City of New York be, and it is hereby, enjoined and restrained from selling or in any manner disposing of the following securities, namely: "2,093 shares of the capital stock of Commonwealth Edison Company, an Illinois corporation, of the par value of $100.00 each; "2,068 shares of the capital stock of The Peoples Gas Light and Coke Company, an Illinois corporation, of the par value of $100.00 each; "1,177 shares without par value of the common stock of Public Service Company of Northern Illinois, an Illinois corporation; heretofore pledged with it by Corporation Securities Co. of Chicago, together with any and all other stocks, bonds or securities heretofore pledged to The Chase National Bank of the City of New York, by Corporation Securities Co. of Chicago: and

"And It Is Further Ordered that the National City Bank and Trust Company of New York be, and it is hereby enjoined and restrained from selling or in any manner disposing of the following securities, namely: "16,391 shares of the capital stock of Commonwealth Edison Company; "17,591 shares of the capital stock of The Peoples Gas Light and Coke Company; "6,500 shares of the common capital stock of Public Service Company of Northern Illinois; "108 shares of the 7% preferred stock of Public Service Company of Northern Illinois; "334 shares of 6% preferred capital stock of Public Service Company of Northern Illinois; "1,700 shares of the $6.00 preferred stock of Middle West Utilities Company; "228,015 shares of the common capital stock of Middle West Utilities Company; heretofore pledged with it by Corporation Securities Co. of Chicago, together with any and all other stocks, bonds or securities heretofore pledged to the National City Bank and Trust Company of New York, by Corporation Securities Co. of Chicago; "All until the further order of this Court."

bonds and securities so pledged have, at the present time, a certain definite market value, determined by the market quotations of various stock exchanges * * * and * * * such certain definite market value is not a fair actual or intrinsic value of such stocks, bonds and securities * * * but is purely fictitious. * * * the fair, actual and intrinsic value of such stocks, bonds and other securities so pledged * * * is greatly in excess of the indebtedness * * * (to the New York banks) and the * *.* * Receivers, have a substantial interest in and to such stocks, bonds and other securities * * * which * * * amounts to large sums of money, to-wit, millions of dollars"; that the receivers had been notified that such collateral would be sold at public auction; and that they had no money with which to buy these securities at the sale or with which to pay off the indebtedness, etc.

The question which confronts us may be stated thus: May the United States District Court for the Northern District of Illinois which has, upon proper application, appointed receivers of an involved or insolvent corporation, and whose receivers have taken possession of the property of such insolvent company, restrain the sale of stock of other Illinois corporations, belonging to the involved corporation, which stock, prior to the appointment of the receivers, had been pledged or hypothecated with a New York bank to secure loans made by the said insolvent company of said New York bank?

In approaching this question it should be stated that both the Insull Utility Investments, Inc. and the Corporation Securities Co. were Illinois corporations with principal offices in Chicago, which is in the Northern District of Illinois. The companies, the stock of which was pledged by the insolvent companies, were also mainly those of Illinois corporations, and their principal places of business were likewise Chicago in said Northern District of Illinois. The only shares of stock affected by the orders in question which were not of Illinois corporations are of no substantial value and may be ignored.

It may be further assumed that the United States District Court for the Northern District of Illinois was authorized to appoint receivers for the insolvent companies upon the suit of the creditors and upon the consent of the insolvent companies.

With these assumptions narrowing the issues, it may be stated without further discussion:

■ That upon qualification of the receivers, the court acquired jurisdiction over the res of the insolvent companies within the said Northern District of Illinois. Porter v. Sabin, 149 U. S. 473, 480, 13 S. Ct. 1008, 37 L. Ed. 815; Booth v. Clark, 17 How. 322, 334, 15 L. Ed. 164.

■ That as to this property it could make such orders as would protect the insolvent companies' assets against loss or damage. In re Tyler, 149 U. S. 164, 13 S. Ct. 785, 37 L. Ed. 689; McMullen v. Hurley (C. C. A.) 291 F. 374; Fidelity Trust & Safety-Vault Co. v. Mobile St. R. Co. (C. C.) 53 F. 687; Ledoux v. La Bee (C. C.) 83 F. 761; Brady v. South Shore Traction Co. (D. C.) 197 F. 669; Westinghouse Electric & Mfg. Co. v. Richmond Light & R. Co. (D. C.) 267 F. 490; Brictson Mfg. Co. v. Close (C. C. A.) 25 F. (2d) 794.

■ Likewise, it is equally well settled that the District Court did not have jurisdiction over the res which was not located within the district. Booth v. Clark, 17 How. 322, 15 L. Ed. 164; Great Western Mining & Mfg. Co. v. Harris, 198 U. S. 561, 25 S. Ct. 770, 49 L. Ed. 1163; Sterrett v. Second National Bank, 248 U. S. 73, 39 S. Ct. 27, 63 L. Ed. 135.

The narrow and vital question remains— Was the stock of the Illinois corporations pledged as collateral to the New York banks to secure a loan made by the corporations from such banks, res within the Northern District of Illinois?

It is the appellees' position (a) that the proceeding for the appointment of the receivers was one in rem; (b) that thereby all of the estate of the insolvent companies within the jurisdiction of the District Court passed into the hands of the receivers, to be administered by the court; (c) that the pledged stock was, notwithstanding the pledge, the property of the insolvent corporation; and (d) that the equity of the pledgor in the stock pledged was property within the jurisdiction of the District Court for the Northern District of Illinois.

Appellants, on the other hand, contend (a) that the receivers' claim to the pledged stock is no greater than that of the pledgor; (b) that certificates of stock are incorporeal property; (c) that stock pledged and delivered to New York banks constitutes no part of the res within the Northern District of Illinois; (d) that appellants had possession of the stock, and neither the receivers nor the pledgors were entitled to such possession; and (e) that for the purpose of determining

jurisdiction over stock pledged, the latter's situs is New York and not the Northern District of Illinois.

Favored with helpful briefs from both sides, our conclusion, nevertheless, is not entirely free from doubt. Appellants' position finds persuasive support in In re Hudson River Navigation Corporation (C. C. A.) 57 F.(2d) 175, 176. It is true the court there was dealing with an estate in bankruptcy, but we are of the opinion that the jurisdiction of a court in bankruptcy in such matters is as extensive as that of a court of equity which appoints a receiver to protect stockholders and creditors. In that case, the court said:

"Nothing would be more disturbing to transactions of the kind than a doubt thrown upon that ruling. Millions of dollars are daily lent upon like collateral, which fluctuates from hour to hour; unless the pledgee is free to choose his time to sell, his security may disappear. The same is not indeed true of shares like those at bar, or of notes, neither of which vary rapidly in value; but the same legal reasons exist as to them also. The pledgee, having taken possession of the documents, supposes himself for just that reason to be the sole judge of his necessities, and lends on that understanding. So long as he keeps within the terms of the agreement, he need not concern himself with the pledgor's fate, or that of his creditors, who must stand in his shoes."

It is, of course, clear that the court in the instant suit had no jurisdiction over any appellant bank, which by the injunctional orders was restrained from selling the pledged securities. These banks were not parties to the original suit. They did not intervene. They all resided outside of the Northern District of Illinois. Jurisdiction, if it exists at all, therefore must depend upon the claim that the pledged stock was, notwithstanding the pledge, the property of the insolvent corporation and that the equity of the pledgor was property within the jurisdiction of the District Court.

■ Appellees first argue that appellants' appearance was general rather than special and that the court acquired jurisdiction because of such general appearance. Appellants' motion recited that it was "specially and solely for the purpose of presenting this motion and not generally." This motion to vacate the injunction was made after the injunctional orders were entered upon ex parte application. The authorities fail to sustain appellees' contention. The motion having been special, any argument made at the time it was heard to the effect that the injunction was improvidently issued, in addition to the objection to the court's jurisdiction, would not constitute a waiver of appellants' special appearance. Citizens' Savings & Trust Company v. Illinois Central R. Co., 205 U. S. 46, 27 S. Ct. 425, 51 L. Ed. 703; Dahlgren v. Pierce (C. C. A.) 263 F. 841; Davidson Bros. Marble Co. v. U. S. ex rel. Gibson, 213 U. S. 10, 29 S. Ct. 324, 53 L. Ed. 675; Davis v. Cleveland C., C. & St. L. R. Co., 217 U. S. 157, 30 S. Ct. 463, 54 L. Ed. 708, 27 L. R. A. (N. S.) 823, 18 Ann. Cas. 907; Kelley v. T. L. Smith Co. (C. C. A.) 196 F. 466; Armstrong v. Langmuir (C. C. A.) 6 F.(2d) 369. See also Robinson v. Glover et al. (S. D.) 244 N. W. 322.

■ As to the merits of the question it is obvious that the rights of the receivers can be no greater than those of their predecessors in title, the pledgors. The pledgors had neither possession of the stock nor the right to possession. While the exact terms of the pledges are not set forth, the court will not presume invalidity of the pledges, in favor of appellees, upon whom rested the burden of alleging and proving facts which justified the entry of the injunctional orders. Rather must we assume that the pledges were of such character as to give to the pledgees such right of possession, ownership, and disposition as was necessary to effect the object of the transfers. A pledge ordinarily implies a delivery of the personal property pledged, for the purpose, if necessary, of its sale to protect the pledgee against loss in case of the default of the pledgor. In most cases and in this case in particular, the pledges were accompanied by delivery of the certificates and transfers of them to the pledgees.

■ The decisions, a few of which are herewith collected,[2] lead us to the conclusion that

[2] Chase v. Wetzlar, 225 U. S. 79, 87, 32 S. Ct. 659, 56 L. Ed. 990; International Banking Corp. v. Lynch (C. C. A.) 269 F. 242, 245; Hiscock v. Varick Bank, 206 U. S. 28, 27 S. Ct. 681, 51 L. Ed. 945; Gilmore v. Robillard (C. C. A.) 44 F.(2d) 295; Booth v. Clark, 17 How. 322, 15 L. Ed. 164; Merrill v. National Bank, 173 U. S. 131, 19 S. Ct. 360, 43 L. Ed. 640; Blake v. Foreman Bros. Banking Co. (D. C.) 218 F. 264; Merritt v. American Steel-Barge Co. (C. C. A.) 79 F. 228; Ross v. Ross, 233 App. Div. 626, 253 N. Y. S. 871; First National Bank v. Maine, 284 U. S. 312, 52 S. Ct. 174, 76 L. Ed. 313, 77 A. L. R. 1401; Jellenik v. Huron Copper Mining Co., 177 U. S. 1, 20 S. Ct. 559, 44 L. Ed. 647; Easton v. German-American Bank, 127 U. S. 532, 8 S. Ct. 1297, 32 L. Ed. 210; Direction Des Disconto-Gesellschaft v. U. S. Steel Corp., 267 U. S. 22, 45 S. Ct. 207, 69 L. Ed. 495; Simpson v. Jersey City Contracting Co., 165 N. Y. 193, 58 N. E. 896, 55 L. R. A. 796.

the situs of the pledged securities (so far as situs affects jurisdiction of the court in a receivership suit is concerned) is in New York. The absence of possession, or any right to possession, by the receivers and the location of the pledged securities with the pledgees in New York are decisive of the question.

The situs of securities depends in part, we think, upon the situation in which the situs becomes material. To illustrate: Situs of securities for taxation purposes may be in one state. Situs for the purpose of determining whether the securities are res within the jurisdiction of a court may be another state.

Upon the oral argument, counsel for appellees contended that the orders should be sustained because there was doubt respecting the title of the pledgees. This argument is predicated upon a statement appearing in the court's memorandum, made at the time of its disposition of the motions to vacate the injunctions. There is nothing either in the original complaints or in the petitions to suggest any invalidity in the pledge. The allegations of both documents imply, if indeed they do not assert, the validity of the hypothecation to secure the banks' loans. If the fact be that the officers of Insull Utility Investments, Inc. and Corporation Securities Co., in violation of their duty, pledged these securities with the banks, allegations to that effect should have appeared in the complaint or in the petition for the restraining order or in both.

However, if we assume that those in charge of these companies did, in violation of the agreement with the debenture holders, thus illegally lift the securities and pledge them with the banks for a new loan, the latter, the banks, are entitled to be heard in the matter. Their rights can not be disposed of through a summary proceeding. They must be sued in a court having jurisdiction of the subject matter and of the defendants. Ancillary proceedings in the equity suit or in a bankruptcy action may be had in the New York jurisdiction. But disposition of such issues can not be made in the Illinois federal court in these proceedings.

The strong equities which these facts, if true, establish can not affect the question of jurisdiction which is the only one here presented.

The orders appealed from are reversed, and the court is directed to grant the respective motions of the appellants to vacate the injunctional orders complained of.