In re CHICAGO, R. I. & P. RY. CO. *

CONTINENTAL ILLINOIS NAT. BANK & TRUST CO. v. CHICAGO, R. I. & P. RY. CO., and five other cases.

Nos. 5115 & 5159, 5116 & 5160, 5117 & 5161, 5118 & 5162, 5119 & 5163, 5120 & 5164.

Circuit Court of Appeals, Seventh Circuit.

July 23, 1934.

*Writ of certiorari granted 55 S. Ct. 213, 79 L. Ed. ——.

John L. Hopkins, Charles O. Parker, and James A. Sprowl, all of Chicago, Ill. (Stanley F. Reed, of Washington, D. C., A. A. Berle, Jr., of New York City, and C. M. Clay, of Washington, D. C., of counsel), for Reconstruction Finance Corporation.

Isaac H. Mayer, Carl Meyer, David F. Rosenthal, and Herbert A. Friedlich, all of Chicago, Ill., for Continental Illinois Nat. Bank & Trust Co. of Chicago.

Paul D. Miller, Eldon Bisbee, Henry Root Stern, and B. F. Shipman, all of New York City, for Chase Nat. Bank of City of New York.

T. M. Pierce, S. Mayner Wallace, and Milton R. Stahl, all of St. Louis, Mo., for Mississippi Valley Trust Co.

Perry M. Chadwick, of Chicago, Ill., for Harris Trust & Savings Bank.

Edwin W. Sims and James P. Carey, Jr., both of Chicago, Ill., for New York Trust Co.

Marcus L. Bell, W. F. Dickinson, and W. F. Peter, all of Chicago, Ill., for debtor and Frank O. Lowden, James E. Gorman, and Joseph B. Fleming, trustees in bankruptcy.

Elihu Root, Jr., and Wilkie Bushby, both of New York City, for Committee for Debtor's First and Refunding 4% and Secured 4½% Bonds.

William Lloyd Kitchel, of New York City, for Committee for Debtor's 30-year 4½% Bonds.

James H. McIntosh and Edward W. Bourne, both of New York City, for Committee for Debtor's General Mortgage 4% Bonds.

Edward C. Bailly and Robert C. Hardy, both of New York City, for Committee for Consolidated First Mortgage 5% Bonds of Burlington, C. R. & N. Bonds.

A. N. Heuston, of New York City, for Committee for St. Paul & Kansas City Short Line Bonds.

Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.

EVANS, Circuit Judge.

These appeals (allowed both by the District Court and this court) are from an order of the District Court enjoining appellants from selling collateral which appellee, C. R. I. & P. Ry. Co., had pledged as security for loans made to it by appellants. All controverted issues concern the validity and propriety of the order restraining the sale of the pledged collateral and are directed to:

First, the District Court's jurisdiction as a court of bankruptcy, before the 1933 amendment, to issue such an injunction;

Second, its power to so enjoin under (new) section 77 of the Bankruptcy Act (11 USCA § 205), as an incident to reorganization;

Third, its power to enjoin pledgees, specially appearing, some of whom are without, and some within, the court's territorial jurisdiction;

Fourth, the sufficiency of the allegations of threatened injury in the petition to invoke equity's protection, and

Fifth, the constitutionality of section 77 if it be construed to authorize such an injunctional order.

### The Facts.

*Participants in Litigation Below:* On June 7, 1933, the C. R. I. & P. Ry. Co., appellee (hereinafter called debtor), an Illinois and Iowa corporation, filed a petition in the Northern District of Illinois, to propose and effectuate a plan of reorganization under section 77 of the Bankruptcy Act as amended March 3, 1933 (11 USCA § 205). Later, nine wholly owned subsidiary railroad companies, whose properties were under long term leases to debtor, were permitted to join with the principal debtor in its petition for reorganization. The trustees of the road were made party appellees to this appeal by order of this court entered April 6, 1934.

The appellants, the pledgees, are five banks (two Illinois, two New York, and one Missouri, corporations) and the Reconstruction Finance Corporation. All appellants filed special appearances and affidavits in support thereof, in the proceedings below, to contest the court's jurisdiction over them and over the property pledged. In addition, the Illinois banks and the R. F. C. challenged the jurisdiction of the District Court to grant the restraining order in the summary proceeding.

Other entities participating in the proceedings below were five protective committees, representing various funded issues of debtor, who filed answers to several of debtor's petitions, and who filed a petition asking for appointment of trustees, but none of which protective committees had formally become parties to the proceedings although they expressed an intention of later asking leave to intervene.

*Facts Set Forth in the Pleadings:* Debtor's initial petition of June 7 alleged its inability to meet interest and principal·payments of $2,259,710.85, maturing in the interim of June 27 to July 15, and principal obligations of $144,303,700, maturing March and April 1, 1934. The court approved the petition on June 7 and directed the continued operation of the railroad. A pertinent provision of the order is set forth verbatim.[1]

Debtor's petition of June 26 set forth in detail its obligations shortly maturing. The court ordered, on the debtor's recommendation, that interest due the R. F. C. be paid so as to prevent acceleration of maturity, pursuant to a tri-partite arrangement of debtor's other loans from appellant banks. Certain other items of interest were ordered paid, but payment of interest on the debtor's General Mortgage 4% Gold Bonds was ordered deferred, there being a six months' grace period. On July 26 another petition was approved by the court ordering interest paid the R. F. C. and deferring interest on bonds of a subsidiary guaranteed by debtor, pending the period of grace. On August 28, debtor filed another petition of similar import, which was approved. A protective committee filed an answer to the petition of the debtor, protesting the payment of interest to the R. F. C. when interest on the bond issue remained in default.

On September 26, the petition was filed which evoked the order appealed from. The debtor alleged it owed the following notes maturing March 1, 1934, secured by the designated amount of collateral consisting of the obligations of itself and subsidiaries:

| Owed to | | Collateral*** |
|---|---|---|
| R. F. C. | $13,659,877.58 | $41,702,465.58 |
| Chase N. B. | 2,000,000 | 7,209,000 |
| Continental | 1,250,000* | 4,065,000 |
| N. Y. Trust | 500,000 | 1,810,000 |
| Harris | 250,000 | 895,000 |
| Miss. Valley | 125,000** | 430,000 |

* reduced by $242,403.74 belonging Company on deposit in bank.

** reduced by $15,672.92 belonging Company on deposit in bank.

*** $7,575,000 debtor's own obligations; and the remainder, its subsidiaries' obliga-

[1] "(8) That all persons, firms and corporations, whatsoever, and wheresoever situated, located or domiciled, hereby are restrained and enjoined from interfering with, attaching, garnisheeing, levying upon, and enforcing liens upon, or in any manner whatsoever disturbing any portion of the assets, goods, money, railroads, properties, and premises belonging to, or in the possession of the Debtor, or from taking possession of, or in any way interfering with the same, or any part thereof, or from interfering in any manner to prevent the discharge by the Debtor of its duties in the operation of said property and business, under the orders of this Court, or from bringing any new suits or actions, accruing prior to this date, in or before any Court from which an appeal, or proceedings to review, can be taken only upon the filing of an appeal bond, as a jurisdictional or mandatory requirement."

tions. $1,400,000 of the collateral given the R. F. C. was not bonds.

The petition asked the court to determine whether it should enjoin the holders of the collateral notes, in the event of default in payment of interest on October 1 to the R. F. C., from selling said collateral. A pertinent portion of Petition No. 15 is set forth below.[2]

Notice of the filing of the petition and a copy thereof were sent by registered mail to each of the appellants and the protective committees. An answer was again filed by a protective committee (of the 4% General Mortgage) protesting against payment of interest to the R. F. C. and pointing out that the six months' grace period would terminate January 1, when the principal of the bond issue might be declared due. The chairman of another protective committee filed an affidavit in answer to Petition No. 15 requesting the court to enjoin secured creditors from selling the collateral.

The District Court entered Order No. 15 on September 26, directing payment of interest to R. F. C. and stating that:

"* * * the Reconstruction Finance Corporation and the various Banks by their respective counsel having agreed in open Court that, pending the determination of the matters and things submitted in said petition, they would not undertake to convert, sell or dispose of the collateral pledged under their various notes, respectively, except upon five (5) days' notice to the Debtor corporation, if the interest due September 30, 1933, on the said Reconstruction Finance Corporation loan should be paid * * *."

Thereafter, on November 22, the District Court entered Order No. 15 A, from which this appeal was taken. Material portions thereof are set forth in the margin.[3] The order recited service of the petition upon the appellants and of their special appearances. It stated that the collateral consisting of obligations of the debtor and its subsidiaries to the extent of $54,000,000 is pledged to secure the loans from the R. F. C. and the banks, which loans amounted to $17,784,877.58.

A petition for appointment of trustees to operate the railroad was filed by five protective committees on September 26. The debtor filed an answer objecting to appointment of trustees, stating it would only be added expense and that the present directors and officers were competent and experienced. It set forth its corporate structure to support

---

[2] "(5) The value of the collateral securing each of the said collateral loans referred to above is substantially in excess of the amount of the respective loans; and if the holders of the said notes should convert or sell the same, it would cause a substantial and irreparable loss to the trust estate; and in case of a forced sale of the said collateral at the present time, it *might* result in a substantial deficiency judgment *against* the Debtor herein, and would dilute the respective interests in the trust estate of the holders of the First and Refunding Bonds, the St. Paul and Kansas City Short Line 4½% First Mortgage Gold Bonds and the Rock Island, Arkansas and Louisiana 4½ First Mortgage Gold Bonds, and of all the other creditors of the trust estate, in proportion to the rank and lien of the obligations by which their claims or interests therein are evidenced, and of this Debtor as the owner of the trust estate."

[3] "And it further appearing that each of the said collateral notes contains provisions that if the Railway Company shall become insolvent, however such insolvency may be evidenced, or if a receiver shall be appointed of any of the property or assets, or any part thereof, of the Railway Company, or if interest thereon be not paid when due, the holders thereof may sell and dispose of the collateral securing the same; and that there is danger that the holders of said notes will claim that one or more of the events entitling them to sell said collateral have occurred;

"And it further appearing to the Court that a sale of the said collateral, or any part thereof, by the Reconstruction Finance Corporation, or by the said banks, would be inconsistent with the purposes of section 77 of chapter 8 of the Acts of Congress relating to bankruptcy, and would hinder, impede, obstruct, delay, and in effect prevent the orderly preparation and consummation of a plan of reorganization of the trust estate under said section 77, which is the sole purpose of said section 77, under which these proceedings are now pending;

"And it further appearing that, under the provisions of paragraph (a) of said section 77 (11 USCA § 205 (a), this Court, having approved the Debtor's petition, has during the pendency of these proceedings exclusive jurisdiction of the Debtor and its property, wherever located; and that under paragraph 15 of section 2 of the Acts of Congress relating to bankruptcy (11 USCA § 11 (15), this Court has power to make such orders, issue such process, and enter such judgments, in addition to those specifically

its contention that the stockholders (many of whom had become such in a former reorganization in 1917) had still a property interest of value in the railroad:

Stock 7% preferred.... $29,422,189
6% preferred.... 25,127,300
common ........ 74,359,722.50
—————————
$128,909,211.50

Funded debt as of June 7, 1933:
funded debt in hands of
public ............$281,995,000
funded debt of subsidi-
aries ............ 30,370,720
loans and bills payable 17,843,700
—————————
$330,209,420

Valuation of property by Interstate Commerce Commission in 1929— $514,103,604.06.

On November 22, the District Court appointed three trustees to operate the roads of the debtor and of the subsidiaries which had joined in the petition.

*Statutes:* Pertinent sections of the Bankruptcy Act are set forth below.[4]

*Jurisdiction.* All appellants assail the order because it is an unauthorized exercise of authority by the court and because it is an unwise exercise of discretion, if authorized. Several appellants who appeared specially, in addition to the above ground, challenge the validity of the order because they reside beyond the territorial jurisdiction of the court, were not parties to the suit, were not before the court (save as they appeared specially), and the court was therefore as to them [Guaranty Trust Co. of New York v. Fentress (C. C. A.) 61 F. (2d) 329] without power to make a valid restraining order. This last assigned

---

provided for, as may be necessary for the enforcement of the provisions of the said Acts of Congress relating to bankruptcy;

"And it further appearing that it is necessary for the enforcement of the provisions of section 77 that the said holders of said collateral be enjoined and restrained from selling or disposing of the same, or any part thereof, pending the preparation and consummation of said reorganization plan;

"Now, Therefore, it is

"Ordered, that Reconstruction Finance Corporation, The Chase National Bank of the City of New York, New York Trust Company, Mississippi Valley Trust Company of St. Louis, Continental Illinois National Bank and Trust Company of Chicago, and Harris Trust and Savings Bank of Chicago, be and they each hereby are restrained and enjoined from converting, selling, or otherwise disposing of the collateral held by them as security for promissory notes of the Debtor, or any part thereof, until further order of this Court."

[4] 11 USCA § 11: "The courts of bankruptcy * * * are hereby invested, within their respective territorial limits * * * with such jurisdiction at law and in equity as will enable them to exercise original jurisdiction in bankruptcy proceedings * * * (15) make such orders, issue such process, and enter such judgments in addition to those specifically provided for as may be necessary for the enforcement of the provisions of this title."

11 USCA § 205 (section 77), (March, 1933, amendment): "(a) * * * If the petition is so approved, the court in which such order approving the petition is entered shall, during the pendency of the

proceedings under this section and for the purposes thereof, have exclusive jurisdiction of the debtor and its property wherever located. * * *

"(c) Upon approving the petition as properly filed the judge * * * (3) may * * * authorize the trustee or trustees to issue certificates for cash, property, or other consideration approved by the judge, for such lawful purposes and upon such terms and conditions and with such security and such priority in payments over existing obligations, secured or unsecured, as might in an equity receivership be lawful. * * * For all purposes of this section claims against a railroad corporation which would have been entitled to priority over existing mortgages if a receiver in equity of the properties of the debtor had been appointed by a Federal court at the date of the filing of the petition hereunder shall be entitled to such priority, and holders of such claims shall be treated as a separate class of creditors. * * *

"(g) * * * The judge shall confirm the plan if satisfied that * * * (6) the plan provides with respect to any class of creditors the acceptance of which is requisite to the confirmation of the plan, and who would not become bound by the plan under the provisions of subdivision (h) of this section, adequate protection for the realization by them of the value of their securities, liens, and claims, either (a) by the sale of such property subject to their liens, if any, or (b) by the sale free of such liens at not less than a fair upset price, and the transfer of such liens to the proceeds of such sale, or (c) by appraisal and payment in cash of either the value of such liens and claims or, at the objecting creditors' election, the

ground of attack is unavailable to several of the appellants who reside within the territorial jurisdiction of the District Court, and their bonds which were the subject of the order were also within the Northern District of Illinois, Eastern Division.

In support of the first assault upon the order appellants argue consecutively for the following propositions: (a) Under the Bankruptcy Act as it existed prior to the amendment, a court of bankruptcy could not without actual or constructive possession of the property make an order in a summary proceeding over the objection of a secured creditor, which affected the validity of said secured creditor's lien on, or claim to, said property. (b) Where securities of the bankrupt have been transferred to a creditor as collateral more than four months prior to the commencement of the bankruptcy proceedings under circumstances which did not come within the purview of section 60 (b), section 67 (e), or section 70 (e), of the Bankruptcy Act, 11 USCA §§ 96 (b), 107 (e), 110 (e), the claim of such secured creditor to the possession of such pledged security and its right to deal therewith in accordance with the terms of the pledge constitute a substantial adverse claim which may only be validly attacked in a plenary suit. (c) A court of bankruptcy is not authorized to restrain, through an order entered in a summary proceeding, the sale of collateral which was in the possession of the secured creditor prior to the commencement of the bankruptcy proceedings. (d) Where the pledged collateral consists of obligations of a corporation other than the insolvent debtor, the sale of the collateral may not be enjoined in a summary proceeding and can not be enjoined in a plenary suit if the pledge were not a voidable preference. (e) The amendment, section 77 of the Bankruptcy Act (11 USCA § 205), did not extend the power of the court to issue injunctions to restrain sale of collateral held by a creditor. (f) Section 74 (11 USCA § 202), enacted as a part of the same act which contained section 77, has been construed by a district court as not authorizing courts of bankruptcy to enjoin a sale of pledged collateral of the debtor. (g) The same construction should be given to section 77, and both section 77 and section 74 should be construed so as to grant to courts of bankruptcy no more authority than the statute expressly conveys. So construed, courts of bankruptcy, under the amendment, have no greater authority to grant injunctions restraining the sale of collateral than they had before.

It may be and is assumed for the purpose of this argument (Bardes v. Hawarden First Nat. Bank, 178 U. S. 524, 527, 20 S. Ct. 1000, 44 L. Ed. 1175; Taubel-Scott-Kitzmiller Co., Inc., v. Fox, 264 U. S. 426, 432, 44 S. Ct. 396, 68 L. Ed. 770) that the order here under review, having been entered in a summary proceeding, could not be sustained as against all appellants save as the amendment known as section 77 of the Bankruptcy Act supplies the authority therefor. We can therefore address ourselves promptly and directly to the terms, the effect, and the validity of said section 77.

That the order may have been sustained under the Bankruptcy Act, before amendment under certain circumstances and as against creditors who occupy positions similar to some of the appellants is earnestly asserted. We are, however, for brevity's sake, avoiding a discussion of such questions because unnecessary. We desire to direct our attention to the statute as amended—to the condition that confronts us, not to a theoretical or supposititious question.

For a consideration of the general powers of Congress to deal with bankruptcy matters, to define and confer powers and jurisdiction upon District Courts, reference is made to

value of the securities allotted to such liens and claims under the plan. Section 93, clause (h), of this title shall be applicable to the appraisal of securities under this section, and the value of the unpaid balance shall be appraised as an unsecured claim * * *."

"(h) Upon such confirmation the provisions of the plan shall be binding upon * * * (7) all secured creditors of each class of which two-thirds in amount shall have accepted the plan * * *.

"(1) In addition to the provisions of section 29 of this title for the staying of pending suits against the debtor, such suits shall be further stayed until after final decree the judge may, upon notice and for cause shown, enjoin or stay the commencement or continuance of any judicial proceeding to enforce any lien upon the estate until after final decree. * * *

"(n) In proceedings under this section and consistent with the provisions thereof, the jurisdiction and powers of the court, the duties of the debtor and the rights and liabilities of creditors, and of all persons with respect to the debtor and his property, shall be the same as if a voluntary petition for adjudication had been filed and a decree of adjudication had been entered on the day when the debtor's petition was filed."

the decision of In re Landquist (In re Parmenter) (C. C. A.) 70 F.(2d) 929.

Upon the authority expressly granted by the Constitution to Congress (article 1, § 8), that body is authorized to enact such bankruptcy legislation as it may deem wise and appropriate. The constitutional grant of authority is not conditional nor limited, save that its laws be uniform throughout the United States. If the Congress divides debtors into classes such as farmers, corporations, individuals, railroads, etc., it is acting within its powers. It is not for the courts to brush aside such classifications on the ground that there is not sufficient justification in fact therefor. Congress may determine the amount of claims and the number of creditors necessary to file an involuntary petition. It may authorize the filing of voluntary petitions and may limit that right in so far as involuntary petitions are concerned. 11 USCA § 22. Even solvent persons may go through bankruptcy via the voluntary route. Hanover National Bank v. Moyses, 186 U. S. 181, 22 S. Ct. 857, 46 L. Ed. 1113. And this was so before the 1933 amendments.

Congress, having the express authority to enact legislation on the subject matter of bankruptcy, was the sole judge of the means and their appropriateness to the purpose of the legislation so long as said means did no violence to the provisions of the Constitution.

It required no investigation by Congress to show that the railroad companies occupied a distinct and unique position and were the legitimate subject of special provisions of the Bankruptcy Act. The necessity of continuing the operation of the railroad, the impracticability of liquidating its assets through the usual methods adopted in courts of bankruptcy, the futility of selling divisions or subdivisions of railroads or of rolling stock, etc.,—all unite to furnish a basis in fact for a classification of debtors which singled out railroad corporations and provided specially and specifically for their administration by the Court.

In the amendment of 1933 there appeared in the new section 77 several provisions which are significant when considering the various objections to the court's jurisdiction.

Section 205 (a), title 11 USCA, reads: "* * * If the petition is so approved, the court in which such order approving the petition is entered shall, during the pendency of the proceedings under this section and for the purposes thereof, have exclusive jurisdiction of the debtor and its property wherever located."

Section 205 (c) (3) provides that the judge "may for cause shown, and with the approval of the commission, * * * authorize the trustee or trustees to issue certificates for cash * * * and with such security and such priority in payments over existing obligations, secured or unsecured, as might in an equity receivership be lawful."

Section 201 provides: "In addition to the jurisdiction exercised in voluntary and involuntary proceedings to adjudge persons bankrupt, courts of bankruptcy shall exercise original jurisdiction in proceedings for the relief of debtors, as provided in sections 202, 203, and 205 of this chapter."

The provision which expressly extends jurisdiction of the court of bankruptcy is significant and distinguishes decisions under the Bankruptcy Act as it existed prior to the amendment.

There were no legal obstacles to Congress' making the jurisdiction of the court of bankruptcy co-extensive with the territorial boundaries of the United States. In fact, under existing provisions of the Constitution, Congress might validly extend the jurisdiction of any District Court to the entire United States. U. S. v. Union Pacific R. Co., 98 U. S. 569, 604, 25 L. Ed. 143. There were strong reasons for extending the jurisdiction of the court of bankruptcy in railroad cases.

No sufficient reason has been advanced for refusing to give to the language of this section ("have exclusive jurisdiction of the debtor and its property wherever located") the effect and construction which it clearly demands. It extended the court's jurisdiction over the debtor's property so as to include the entire United States. It was intended to and did wisely exclude ancillary receivership proceedings in bankruptcy cases wherein railroad corporations were the bankrupts.

The question, Was the collateral with which the debtor secured its loans from the appellants, property as that word is used in section 77? we answer in the affirmative. It is true a debt is not an asset. It is a liability. But here the bonds which the debtor gave the creditor as security (largely debtor's bonds) were not transferred absolutely to the creditors. An equity therein existed and belonged to the debtor. The debtor could sell this equity. It could assign it. The bonds were secured by a mortgage on debtor's property, and each bond carried its pro rata share of the mortgage security. The same may be said of the bonds of the debtor's subsidiaries.

This construction of the act overcomes the objection of those appellants who by special appearance attacked the order on the ground that the property of the bankrupt corporation was not within the territorial limits of the district wherein the court that entered the order was residing. We hold this was not necessary, for the aim of the court extended to the property of bankrupt "wherever located"—that is, anywhere in the United States. In short, the jurisdiction of the court, so far as the property was concerned, included the territory wherein all of appellees' bonds were located.

May the restraining order be issued in a summary proceeding? Again we look to the 1933 amendment to find the authority for the court so to proceed.

Title 11 USCA, § 205, subd. (c), conveyed to the court of bankruptcy many powers in addition to those conveyed by the Bankruptcy Act as originally enacted. Some of them were like those exercised by a court of equity in receivership matters. For instance, subdivision (3) of this section makes direct reference to the powers of a court of equity. It provides that a judge may for cause shown authorize the issuance of certificates as "might in an equity receivership be lawful."

Surely, we are justified in giving to the amendment a liberal construction, one that is consonant with the purposes of this remedial legislation. That which distinguishes this section from the old act—the gist of the change evidenced by this amendment, that which makes it effective—is the provision which calls for a *plan* of *reorganization*. It calls not for a sale of assets and a discharge of the debtor, but for a plan of reorganization wherein the indebtedness and capital structure are changed (usually reduced) so that the debtor may live and the creditors will receive more than is obtainable upon a liquidation sale. The consummation of a fair and equitable plan of reorganization is the goal of the legislation. How could a plan of reorganization be perfected unless the courts restrained creditors and lienholders from proceeding in a manner which would defeat the consummation of said plan?

In the instant case some fifty-four millions of dollars of the debtor's and its subsidiaries' bonds were hypothecated with creditors whose claims were scarcely one-third that amount. To successfully reorganize, it is necessary to take care of the funded indebtedness amounting to approximately two hundred and eighty millions of dollars. If, in addition thereto, fifty-four million dollars of bonds were beyond the control of the court, it would be quite impossible to proceed with any reorganization.

[11] Nor can we say the appellants, the claimants, occupied such an adversary status that a trial in a plenary suit was necessary. The trustees named by the court in the bankruptcy proceedings were not claiming adversely to appellants. The creditors were not claiming liens or title to property adverse to the trustees. The trustees admit the legality of the security held by the creditors, as well as the validity and amount of the creditors' claims.

The controversy was restricted to a restraining of the immediate pursuit of a remedy by the creditors in order that a plan might be presented which would take care of appellants' claims in full but without special and irreparable injury to other creditors, general and preferred, who were less fortunate in the amount and character of their security.

Our conclusion is that the restraining order is an exercise of authority on the part of the court which was necessary to the effective use of the powers expressly conferred by Congress through this amendment. In short, it was the exercise of a power which was incident to those expressly conveyed by Congress to the court. The proceeding involved no adversary contest but merely the pursuit of a remedy. The court violated no right of the appellants of which they could complain when it temporarily stayed the enforcement of their remedy arising out of the pledge of the collateral. Home Building & Loan Ass'n v. Blaisdell, 290 U. S. 398, 54 S. Ct. 231, 78 L. Ed. 413, 88 A. L. R. 1481.

Upon the record before us we cannot say that the sale of the collateral by the pledgees will not defeat the purposes of section 77. On the other hand, we agree with Judge Wilkerson that the facts called for an exercise of discretion on the part of the court in favor of the moving parties.

The first impression might well be to the effect that the statement of appellants that they did not contemplate the sale of the securities obviated the necessity of an injunction. Such assurance by the creditors, however, was limited to a very short period—five days. The consummation of a reorganization plan of a railroad of the magnitude of the debtor, during which time the claims of the conflicting parties and interests must be considered, necessitates not five days but a much longer period, the exact duration of

which can not be prognosticated. Without some control over the disposition of $54,000,-000 of bonds which have been hypothecated to secure nearly $18,000,000 of indebtedness, the presentation of a satisfactory plan of reorganization might as well be abandoned.

Appellants, it seems to us, overstress the dangers of the pendency of such injunctional order. It is not irrevocable. It may be vacated. It may at any time be changed upon a convincing showing by the creditors. The court will protect appellants against possible injury traceable to frozen asset anxieties as promptly as it will endeavor to effectuate a plan which will result in the full payment of appellants' claims and the maximum safety and security for the holders of other bonds and obligations of the debtor. If plans are not forthcoming with reasonable promptness, relief will be granted appellants. This bankruptcy proceeding contemplates a plan of reorganization. *This must be undertaken expeditiously and proceeded with diligently. Such proceedings must never be viewed as nursing receiverships.* The two sections, 74 and 77, (11 USCA §§ 202, 205) are not to be used to delay, but to facilitate reorganizations of properties that are over-capitalized or whose capital structure is unfortunate. There is no basis for appellants to assume the court will not insist on the consummation of these ends.

Appellants have received and will probably continue to receive the prompt payment of interest upon their claims secured by the debtor's and its subsidiaries' bonds. Balancing equities, we find the court wisely sought to protect the great mass of debtor's creditors without injuring the position of appellants and at the same time keeping strictly within its power. It retains the power to correct or modify any restraining order if and when a creditor presents a meritorious cause for modification.

Appellants' attack on the merits is somewhat unique. They do not object to the terms of the order for they do not contemplate the sale of the pledged collateral. They object to being ordered. If the court may make such an order, and we hold it can, little attention need be given to an objection which if sustained would be destructive of that cooperative action which is so essential in the readjustment of the debtor's debts and its capital structure or in the reorganization contemplated by section 77.

As to the constitutionality of section 77 of the Bankruptcy Act, little need be said in addition to what has already been stated, to show this objection is untenable. If the order assailed deals merely with the remedy, as we hold it does, then the amendments violate no provision of the Constitution. That such restraining orders affect the remedy only, see Allebach v. Thomas (C. C. A.) 16 F.(2d) 853.

Likewise, legislation which deals with the subject of bankruptcy, that is, legislation for the benefit and relief of creditors and debtors—is not subject to the same constitutional limitations as legislation which deals with other subjects and which affects contractual rights and obligations of debtors and creditors. The grant of power "to establish * * * uniform Laws on the subject of Bankruptcies" (Const. art. 1, § 8, subd. 4) was necessarily a grant of power the exercise of which would impair the obligation of contracts. For legislation on the subject of bankruptcy contemplates a discharge of the debtor's debts—which is an impairment of contractual obligations. Hanover National Bank v. Moyses, 186 U. S. 181, 22 S. Ct. 857, 46 L. Ed. 1113.

The decree is affirmed.