74 F.2d 413 (1935)
In re STERBA.
CHICAGO TITLE & TRUST CO.
v.
STERBA.
Nos. 5193, 5229.
Circuit Court of Appeals, Seventh Circuit.
January 5, 1935.
*414 George Gillette and Elmer M. Leesman, both of Chicago, Ill., for appellant.
Samuel Wodika, of Chicago, Ill., for appellee.
Before ALSCHULER, EVANS, and FITZHENRY, Circuit Judges.
EVANS, Circuit Judge.
These appeals are from a decree refusing to vacate an order entered in a proceeding instituted by appellee, under section 74 of the Bankruptcy Act (Act March 3, 1933, § 1 [see 11 USCA § 202]), restraining appellant, mortgagee, from foreclosing its mortgage on appellee's property.
Appellee's petition, filed July 24, 1933, sought a composition or an extension of time within which to pay her debts. Appended to the petition were schedules of debts and of assets. The enumerated secured liabilities included a $70,000 mortgage (evidenced by 164 bonds held by unknown persons; this bond issue had been reduced to $56,000); a $20,000 mortgage held by appellant, which is the basis of this appeal; a $2,000 mortgage; and two other comparatively small claims. The unsecured liabilities were for small amounts. The assets consisted of the three pieces of realty, mortgaged as stated. The value of the equities was stated as "unknown." Choses of action of the value of $3,873 were listed.
The District Court referred the debtor's petition to a referee who reported that the petition had been filed in good faith. On August 7, 1933, the District Court entered an order restraining the foreclosure of mortgages against the property of the estate of the debtor. Appellant petitioned to vacate the restraining order. After another hearing, the referee sustained the entry of the restraining order. In support thereof referee found that income from the mortgaged property was being paid to the county collector on past due general taxes and that the remainder of the income was being deposited with the clerk of the court and that monthly reports of the handling of the property were made to the court.
Appellant's exception to the referee's report was predicated on a lack of authority in Congress to enact section 74 which provides for extension of time for payment of debts, as that subject matter was not within the category of "bankruptcies" upon which Congress possesses the constitutional power to legislate. The District Court overruled the exceptions to the referee's report. The appeal from this order followed.
Appellant's position, broadly stated, is that a law granting a moratorium cannot be *415 classified as legislation concerning bankruptcy. It further argues that, assuming section 74 to be valid, it is inapplicable to a secured indebtedness which is owned solely by one owner who is unwilling to accept an extension proposal and whose secured claim is the sole incumbrance against one piece of property. And lastly it argues that even though section 74 be legislation authorized by the Constitution, that part of section 74 which authorizes time extensions where the mortgage is held by a single creditor, is unconstitutional.
This court has held in Re Fred E. Landquist et al., Debtors, 70 F.(2d) 929, that the enactment of section 74 was a valid exercise of power by Congress. We see no reason for withdrawing from the position there taken. Again, in Re Chicago, Rock Island & Pacific R. Co., Debtor, 72 F.(2d) 443, this court sustained the validity of similar legislation.
Nor can we find support in reason for a different conclusion because of its application to secured creditors. Assuming as we do that Federal legislation on the subject of bankruptcies is "for the benefit and relief of creditors and debtors in cases where the debtors are unable to pay their debts," we see no basis for distinguishing between the right of a bankrupt to invoke the jurisdiction of the court to administer estates which are encumbered in part and instances where it is invoked to administer estates where the debts are all unsecured. Likewise, if Congress may authorize the discharge of a bankrupt from his debts, it may, we think, provide for the lesser act of extending the time of payment of the debtor's secured debts. Of course, it is hardly necessary to observe that the court can not disturb the status of the lien. The act so provides: "Provided, however, That such extension or composition shall not reduce the amount of or impair the lien of any secured creditor, but shall affect only the time and method of its liquidation." Section 202(i), 11 USCA.
Does section 74 apply to instances where one creditor holds the only incumbrance upon a single piece of property?
Section 74 (e) of the Act (11 USCA § 202(e) provides:
"An application for the confirmation of a composition or extension proposal may be filed in the court of bankruptcy after, but not before, it has been accepted in writing by a majority in number of all creditors whose claims if unsecured have been allowed, or if secured are proposed to be affected by an extension proposal, which number must represent a majority in amount of such claims * * *."
Appellant's argument seems to hinge around the word "or" italicized above. It argues that the use of the disjunctive is significant of the fact that Congress meant to make two distinct classes of creditors, the unsecured, who should pass upon the extension of their claims; and the secured creditors who alone should approve of the extension of the debt. It contends that if there were to be but one class of creditors, Congress would have used the word "and" in place of "or" and would have used the word "all" instead of the word "such."
We cannot accept this construction of the language.
Congress was describing the claims to be included  all creditors whose claims if unsecured have been allowed

or
if secured are proposed to be affected by an extension proposal. It is to be noticed that the word "number" is used in the singular  meaning the majority in number of both kinds of claims. The reason the word "such" was used instead of "all" is that not all claims necessarily were included, those of the secured claims not proposed to be included being excluded. If Congress had said "all," it would possibly have covered some secured claims which were not included in the plan.
This conclusion is in harmony with what was obviously the intention and purpose of Congress in passing this legislation.
The contention that the act as thus construed, and applicable to creditors like appellant, is contrary to the Constitution must be rejected if we adhere to the views expressed in the Landquist and Chicago R. I. & Pac. Ry. Co. Cases, supra. The conclusions there reached were predicated upon what we believed was embraced in the grant of authority to Congress found in article 1, § 8, cl. 4, which reads, "The Congress shall have Power * * * To establish * * * uniform Laws on the subject of Bankruptcies throughout the United States."
The serious question, it seems to us, in cases of this character, is not so much one of jurisdiction of the court to act as of feasibility of the plan of extension submitted. The creditors holding the $70,000 mortgage may be interested in the estate's equity in the property covered by the $20,000 mortgage. The secured creditor holding the $20,000 mortgage should not be permitted to withdraw the property thus liened from the control *416 of the court and the claims of the other creditors. For by so doing, an asset of value may be taken from the creditors, and likewise, the debtor's prospect of ultimately paying his debts in full, for which this section 74 was enacted, might be greatly lessened.[*]
On the other hand, the court must jealously guard the interests of secured creditors like appellant, and avoid inexcusable losses which are brought about by delays.
This section cannot meet with successful enforcement unless the court insists (a) that the plan of composition or the extension proposal be promptly submitted, and (b) that the plan or "extension proposal" be carefully analyzed from the viewpoint of each secured creditor and that there be fairness to all as well as a justifiable basis for the hope of a realization of the plan.
The necessity for the prompt submission of the plan is apparent. It cannot be too strongly emphasized. This section was enacted because of the failure of receiverships to effectuate, and in many instances to attempt, reorganizations. In equity receiverships, on occasions, the jurisdiction of a court was invoked and a receiver appointed where the mortgage vastly exceeded the value of the property and there was no equity of redemption, and yet the receivership was continued for three, four and even five years with the expenses of the receivership consuming the entire revenue and leaving the bondholders in a worse position each year. The amendments to the Bankruptcy Act, above mentioned, were enacted to remedy the intolerable and seemingly hopeless condition that existed due to the inadequacy and abuse of the remedy which receivership proceedings afforded, as well as to a desire to help debtors who could not meet their obligations but who entertained a well-founded belief that they would ultimately pay their creditors in full from their properties, the values of which were so drastically reduced.
The amendments will, however, serve no useful purpose unless the court insists upon an early submission of the plan. The court should dismiss the proceedings and tax all costs to petitioner unless such plan is promptly forthcoming and it is deemed workable, unless good cause is shown in unusual cases for an extension of time. The withholding from the court of the names of creditors cannot in this circuit now be justified in view of our decision in Re Fred E. Landquist et al., Debtors, 70 F.(2d) 929, for the review of which the Supreme Court has recently denied certiorari. Hardenbrook v. Landquist, 55 S. Ct. 98, 79 L. Ed. ___. This ought to hasten the date of submission of the plan. If efforts are made to thwart or to defeat the discovery of the names of creditors, drastic and effective remedies and courses are available.
Congress has seen fit to extend the jurisdiction of the District Court and to extend the provisions of the Bankruptcy Act to estates of debtors who are insolvent but whose insolvency is traceable to abnormal conditions. This enlargement of jurisdiction, carrying duties in many instances administrative in character, must be assumed in the spirit in which it is delegated. It is not a case of the District Court assuming a jurisdiction which may conflict with the jurisdiction of a state court that has appointed receivers. The United States District Court has no alternative. The right is conferred upon a debtor to petition the United States District Court for action, and the court must act. If petitioner acts in good faith and his plan is feasible, the court must further take action which will divest the jurisdiction of courts of equity, state or Federal. In Gross v. Irving Trust Co., 289 U. S. 342, 53 S. Ct. 605, 606, 77 L. Ed. 1243, 90 A. L. R. 1215, the Supreme Court said:
"The bankruptcy court has exclusive jurisdiction, and that court's possession and control of the estate cannot be affected by proceedings in other courts, state or federal. Isaacs v. Hobbs Tie & T. Co., 282 U. S. 734, 737, 51 S. Ct. 270, 75 L. Ed. 645, and cases cited. Such jurisdiction having attached, control of the administration of the estate cannot be surrendered even by the court itself. Id., 282 U. S. 739, 51 S. Ct. 270, 75 L. Ed. 645. `The filing of the petition is a caveat to all the world and in fact an attachment and injunction.' * * *"
*417 Likewise, the Congress in its wisdom, gave to the petitioner the right to apply to any United States District Court in the state wherein a corporate debtor is incorporated. The court is not the judge of the wisdom of such provision of the amendment. It must take the Act as it is passed. Again, it is not the United States District Court which is assuming jurisdiction. It is a jurisdiction which it cannot avoid. It should, and must, act unhesitatingly and in furtherance of the purpose of the Act which conferred the jurisdiction. It is unfortunate that there may be clashes over jurisdiction or that animosities may develop between equity court receivers and counsel and trustees appointed under this section of the Bankruptcy Act. There is but one course open to the United States District Court. All state and Federal courts of equity must submit to and be bound by the lawful Congressional action such as bankruptcy legislation.
Speaking of the plan which must be submitted for the court's and creditors' consideration it might be observed in passing that a plan is not a feasible nor a practicable one which ignores and conflicts with well considered and well matured plans ready for adoption in an equity receivership which are backed by the support of a substantial majority of the creditors. The court is not required to accept, however, as a good faith plan, one which was matured over night after proceedings under these sections were instituted in an apparently desperate effort to defeat the bankruptcy proceedings. If it appears that months and even years have elapsed since the equity proceedings were instituted during which time a relatively large percentage of the gross revenues of the receivership have been diverted from bondholders to receivership costs and expenses, and no steps have been taken to help the debtor or protect the creditors, the time for action in the court of bankruptcy is usually ripe. A plan is not feasible which does not consider the rights of each creditor, the character of each lien, and the value and productivity of the property covered by the lien. To be specific, appellant's claim is secured. In an effort to help other creditors, the court should not overlook the favored position of appellant due to its sole ownership of the mortgage against a single tract of debtor's property. In short, these proceedings should have but one purpose  to promote the interests of debtor and creditors in cases "where the debtors are unable to pay their debts."
The number and size of claims may be considered but they are by no means the sole test. The facts showing income  amount of debts  the good or bad faith of those who originated the venture, and floated the bond issues  the probability of solvency through improvement in business conditions  are all to be considered. Upon a sane conclusion based upon these facts, the good faith of petitioner's application must depend.
The proceedings under sections 74, 75, 76, and 77 are not the equivalents of equity receivership proceedings. They contemplate a feasible plan, promptly presented, whereby the overburdened debtor may, through creditors' cooperation (though unanimous creditor action is unnecessary) secure a scaling of debt or interest, or an extension of due date of debts. If none of these objects can be accomplished no good purpose can be attained by retaining jurisdiction of the proceedings. The case is then, one for liquidation through bankruptcy proceedings.
And finally, we may add, success under this act will not be assured, unless the court recognizes that its duties are primarily administrative. It must act as the head of the administrative branch of an enterprise. It cannot sit idly by and act on plans submitted. It must originate, if necessary, and in many instances use all the forces at its command to bring about cooperation of conflicting interests. It may have to remove officers by it appointed if plans and recommendations are not presented within a reasonable time.
The decree is affirmed.
NOTES
[*] Section 74 was enacted March 3, 1933. It was passed as a relief measure and was intended to alleviate a desperate situation brought on by a sudden and extraordinary decline in values. Section 75 was enacted at the same time and for the same reasons. It applies more particularly to farmers. Sections 76 and 77 apply to persons secondarily liable and to railroads. See 11 USCA §§ 202, 203, 204, 205.

Sections 77A and 77B (11 USCA §§ 206, 207) were enacted June 7, 1934 and were to perfect and make more effective the Act of March 3, 1933, by extending its provisions to corporations generally and by expressly conferring wider jurisdiction upon Federal courts.