## COLLINS v. WELSH.
### No. 7380.

Circuit Court of Appeals, Ninth Circuit.
Feb. 25, 1935.

Vincent W. Hallinan and William F. Herron, both of San Francisco, Cal., for appellant.

Seibert L. Sefton, of San Francisco, Cal., for appellee.

Before WILBUR and GARRECHT, Circuit Judges.

WILBUR, Circuit Judge.

This is an appeal from an order of the District Court in bankruptcy taking jurisdiction of the property of Josephine Welsh and enjoining the appellant, Margaret Collins, from proceeding in the state court to enforce a judgment by execution, all in pursuance of and in accordance with the provisions of section 74 of the Bankruptcy Act, as added by Act March 3, 1933, § 1 (see 11 USCA § 202). The facts are briefly and correctly stated in appellant's brief, as follows:

"On January 29, 1932, Margaret Collins, the appellant, commenced an action in the Superior Court of the State of California in and for the City and County of San Francisco against the appellee, Josephine Welsh, to recover the sum of $15,000; and caused an attachment to be levied upon the real property commonly known as the Hotel Carlton located at 1075 Sutter Street,

San Francisco. This property belonged to the appellee. Thereafter, in the said action, appellant on August 12, 1933, secured a judgment in said Superior Court against appellee in the sum of $15,000 principal and $136.05 costs. On November 28, 1933, the appellant caused a writ of execution to be issued out of the Superior Court to the sheriff of the City and County of San Francisco commanding him to sell the said real property in satisfaction of said judgment. Appellee took an appeal from this judgment, but filed no bond to stay execution. It is admitted in the appellee's petition to which we shall presently refer that the attachment and execution are a lien for $15,000 and costs upon the said real property, and we call attention at this time to the admitted fact that the attachment was levied nearly two years prior to the commencement of these proceedings in the district court.

"After receipt of the writ, the sheriff gave due notice that on January 3, 1934, he would sell the real property to satisfy the said judgment.

"On January 2, 1934, the very day prior to that for which the sale was noticed, the appellee filed in the District Court a formal petition under section 74 of the Bankruptcy Act setting forth that she was unable to pay her debts as they matured and that she desired to effect a composition or an extension of time to pay her debts. With this petition, as required by the Act (subd. a) she filed bankruptcy schedules. In these schedules she listed her total assets at $339,-118.56 and her total liabilities at $169,786.-02. The chief item of liabilities is an indebtedness secured by a deed of trust on the real property heretofore referred to in the sum of $145,750, held by the Bank of America National Trust and Savings Association. This deed of trust is a lien on the Hotel Carlton property, the value of which is listed in the schedules at $300,000, and on other real property at No. 1 Northwood Drive valued at $10,000. At the time of the filing of the petition and schedules, appellee owed $2506 to the City and County of San Francisco for real and personal property taxes.

"At the time of the filing of the said petition and schedules, appellee also filed a second petition which is entitled 'Petition by Josephine Welsh for an order enjoining creditors and others from interfering with property of said petitioner'. This petition recites the facts with reference to the suit, attachment, and judgment in Collins v. Welsh. * * *

"Upon the filing of this petition * * * the judge of the District Court without notice of any kind or character to appellant, without a hearing, and without any opportunity to be heard, signed the decree * * * which not only enjoins and restrains the appellant from selling the property, but from taking any legal proceedings whatsoever against any property of the appellee. * * *

"Upon being served with this decree, the appellant immediately moved to vacate and set aside the decree. * * *

"The District Court denied this motion. From this decree and the order refusing to vacate the same, these appeals are prosecuted."

The appellant's contentions are as follows:

I. Section 74 of the Bankruptcy Act is, in so far as it attempts or purports to authorize the decree appealed from, or any injunction restraining a secured creditor from pursuing his remedy or realizing on his security, unconstitutional and void, as a deprivation of due process of law.

II. Rights acquired by a judgment are property rights which cannot be taken without due process of law.

III. Section 74 of the Bankruptcy Act cannot be upheld under the provision of the Constitution which grants to Congress the power to pass uniform bankruptcy laws.

IV. The state court, having acquired jurisdiction over the real property of appellee, cannot be ousted of its jurisdiction over that property, and the District Court had no jurisdiction to enjoin the officers of the state court from executing the judgment.

V. The decree of the District Court is void because made without notice, which is always essential to due process of law.

VI. The petition of appellee does not allege any irreparable injury.

The principal argument of the appellant is that the provisions of section 74 of the Bankruptcy Act, added by amendment March 3, 1933, are unconstitutional because unauthorized by article 1, § 8, cl. 4, of the Constitution, giving power to the Congress to enact uniform laws on the subject of bankruptcy. That question has been before the Circuit Court of Appeals for the Seventh Circuit in a number of recent cases. In re Landquist, 70 F.(2d) 929; In re

Victor, 70 F.(2d) 937; In re Hillmert, 71 F.(2d) 411; In re Chicago, R. I. & P. R. Co., 72 F.(2d) 443. In these cases the Circuit Court of Appeals of the Seventh Circuit has sustained the constitutionality of the amendments to section 74 of the Bankruptcy Act on the ground and for the reasons stated in Re Landquist, 70 F.(2d) 929. The Circuit Court of Appeals for the Second Circuit, In re Faour, 72 F.(2d) 719, on August 10, 1934, affirmed a judgment of the District Court entered under the provisions of section 74 of the Bankruptcy Act, but the question of the constitutionality of the amendment was apparently not raised or considered in that case. Similarly, the Circuit Court of Appeals of the First Circuit in Molina v. Murphy, 71 F.(2d) 605, decided June 9, 1934, had under consideration the power of the Bankruptcy Court under section 74 of the Bankruptcy Act, added March 3, 1933. In that case the constitutionality of section 74 apparently was not raised. It was held by the majority of the court that under the statute the District Court had no jurisdiction. This decision was in accord with the decision of the Circuit Court of Appeals for the Seventh Circuit in Re Parmenter, 70 F.(2d) 929, a companion case to In re Landquist, supra, dealt with in the same opinion.

In re Victor, 70 F.(2d) 937, supra, a debtor had applied to the District Court, sitting in bankruptcy, for an extension of time to pay his debts. Thereafter, a petition for reclamation of property covered by conditional sales contract was filed and denied. The petitioner appealed claiming "that that act violated Amendment V of the Constitution, and was not within the grant of power in article 1, § 8 of the Constitution." The Circuit Court of Appeals held that the act was not unconstitutional on either ground stated, and affirmed the decree.

In re Faour, 72 F.(2d) 719, the Circuit Court of Appeals for the Second Circuit had under consideration the effect of a proceeding inaugurated under section 74 of the Bankruptcy Act, and sustained the jurisdiction of the District Court, sitting in bankruptcy, to administer all the property of the petitioner. The question of the constitutionality of section 74 was not raised.

In re Chicago, R. I. & P. R. Co., 72 F.(2d) 443, 450, supra, the Circuit Court of Appeals for the Seventh Circuit again affirmed the constitutionality of section 74 of the Bankruptcy Act, and also affirmed the constitutionality of section 77 (11 USCA § 205). This case is particularly interesting because it involves the jurisdiction and power of the District Court, sitting in bankruptcy, to deal with the property of the railway company where it was alleged that the indebtedness was $330,209,320 and the value of the property subject to the indebtedness $514,103,604.06. In the course of the decision written by Judge Evans, it was said: "Even solvent persons may go through bankruptcy via the voluntary route. Hanover Nat'l Bk. v. Moyses, 186 U. S. 181, 22 S. Ct. 857, 46 L. Ed. 1113. And this was so before the 1933 amendments."

The Supreme Court in George M. West Co. v. Lea, 174 U. S. 590, 19 S. Ct. 836, 838, 43 L. Ed. 1098, held that solvency was no defense to involuntary bankruptcy proceedings instituted because the alleged bankrupt had executed a deed of general assignment. While the question of the constitutionality of the Bankruptcy Act was not directly discussed, it is clear from the decision that in view of the Supreme Court the Bankruptcy Act which authorized the court to take jurisdiction over the property of a person who had made a general assignment although not insolvent is clearly within the purview of the constitutional provision authorizing Congress to legislate on the subject of bankruptcy. The court stated: "Under the English bankruptcy statutes (as well that of 1869 as those upon which our earlier acts were modeled), and our own bankruptcy statutes down to and including the act of 1867, the making of a deed of general assignment was deemed to be repugnant to the policy of the bankruptcy laws, and, as a necessary consequence, constituted an act of bankruptcy, per se. * * * In Boese v. King, 108 U. S. 379, 385, 2 S. Ct. 765 [27 L. Ed. 760], it was held, citing (page 387 of 108 U. S., 2 S. Ct. 771) Reed v. McIntyre [98 U. S. 507, 513, 25 L. Ed. 171], that whatever might be the effect of a deed of general assignment for the benefit of creditors, when considered apart from the bankrupt act, such a deed was repugnant to the object of a bankruptcy statute, and therefore was, in and of itself alone, an act of bankruptcy."

The court also referred with approval to the discussion of that subject by Judge Brown in Re Gutwillig (D. C.) 90 F. 475, 478. The jurisdiction of the bankruptcy court, notwithstanding solvency, has been sustained in a case where the bankrupt has admitted in writing its inability to pay its debts and its willingness to be adjudged a

bankrupt on that ground; In re C. Moench & Sons Co. (C. C. A. 2) 130 F. 685; to the same effect is In re Dressler Producing Corp. (C. C. A.) 262 F. 257, and In re Cohn (C. C. A. 3) 227 F. 843. See, also, section 156, Remington on Bankruptcy; notes 3, 112, 113, to 11 USCA § 21.

The appellant relies largely upon the contention that Congress is not authorized by the Constitution to extend the provisions of the Bankruptcy Act to cover cases of debtors who are solvent and whose financial difficulties arise from frozen assets. This contention is based on the historic controversy as to the proper interpretation of the constitutional grant of authority to Congress in cases of bankruptcy.

In view of the fact that we are in accord with the recent decisions of the Circuit Court of Appeals for the Seventh Circuit, we deem it unnecessary to discuss the historic difference of views between a broad and liberal construction of the Constitution with reference to the power of Congress to legislate upon the subject of bankruptcy and the narrower view. These contentions are discussed and dealt with by the Supreme Court in an opinion by Chief Justice Marshall, rendered in 1819. Sturges v. Crowninshield, 4 Wheat. (17 U. S.) 122, 4 L. Ed. 529. These divergent views are stated by Associate Justice Catron of the Supreme Court in his dissenting opinion in Nelson v. Carland, 1 How. (42 U. S.) 265, 11 L. Ed. 126, in which he quotes the views of the District Judge for the District of Kentucky, holding the Bankruptcy Act of 1841 unconstitutional (5 Stat. 440), and his own view on that subject while sitting as a Circuit Judge, in which he reversed a similar decision of the District Court of Missouri holding the Bankruptcy Act of 1841 unconstitutional. This case is reported in a footnote to Nelson v. Carland, supra, 1 How. 265, 277, 11 L. Ed. 126. It was not until 1901 in Hanover Nat. Bank v. Moyses, 186 U. S. 181, 22 S. Ct. 857, 46 L. Ed. 1113, that the Supreme Court definitely took the liberal view that the power of Congress extended to the relief of debtors as well as to the assistance of creditors and definitely established the proposition that a bankruptcy law enacted for the relief of debtors was within the purview of the Constitution. As already pointed out, the Supreme Court had held in George M. West Company v. Lea, supra, that the debtor need not be insolvent. We suggested to counsel in the argument that they cover the question of the

meaning of the word "bankruptcy" at the time of the adoption of the Constitution of the United States, and that request has been ably complied with. An examination of the cases we have cited and particularly the recent decisions of the Circuit Court of Appeals of the Seventh Circuit, render it unnecessary to extend the discussion further. Upon the authority of the foregoing cases and without further discussion we hold that the Congress had constitutional power to deal with the debtor who was unable to pay his debts by reason of frozen assets.

■ Our decision that section 74 of the Bankruptcy Act is constitutional and gives jurisdiction to the bankruptcy court to deal with the property of the debtor disposes of the second contention of the appellant that the rights acquired by his judgment are property rights which cannot be taken without due process of law. That such rights are property rights is unquestioned. That they cannot be taken without due process of law is equally well settled. The Congress has power to vest in the District Court the administration of debtors' property. The District Court has assumed that power, but has not yet exercised it. The question of how that court shall deal with the property and what shall be done by it is not involved in this appeal, which was taken from a preliminary order assuming jurisdiction and not from a decision attempting to deal with the rights of the parties.

■ The fourth proposition is that the state court, having acquired jurisdiction over the real property of appellee, cannot be ousted of its jurisdiction over that property. The contention advanced by appellant deals with the conflict of jurisdiction between the state court and the United States District Court sitting in bankruptcy. In re Faour (C. C. A.) 72 F.(2d) 719. This question was dealt with by the Circuit Court of Appeals of the Second Circuit in Re Faour, 72 F.(2d) 719, 720, supra, where the superintendent of banks of the state of New York, acting under the provisions of the New York banking law, had taken possession of the property of the debtor more than four months prior to filing of petition in the bankruptcy court under the provisions of section 74 of the Bankruptcy Act to petition a composition and extension of all their debts growing out of both their mercantile business and their operations as private bankers. We quote from the decision written by Circuit Judge Chase, as follows: "Had the debtors

filed their petition within four months after the appellant [state superintendent of banks] took possession of their property, the order made would have been correct. [Citing] Gross v. Irving Trust Co., 289 U. S. 342, 53 S. Ct. 605, 77 L. Ed. 1243, 90 A. L. R. 1215. Does the fact that more than four months intervened make the order wrong? We think not. Within its sphere the jurisdiction of a court of bankruptcy is paramount."

In that case the court relied upon the amendment to section 74 (m) adopted June 7, 1934 (11 USCA § 202 (m) because of the fact that in that case the petitioning debtor was not in possession as was required by the act prior to the amendment of 1934. The decision directly holds that rights accruing more than four months before the petition of the debtor to the bankruptcy court are nevertheless subject to that court. If that is true, and we hold that it is, the fact that the bankruptcy court acts at the instance of the debtor in taking possession of the property, which, more than four months previous to the application, had been subject to a perfected lien by the attachment from the state court, is not decisive of the power of the bankruptcy court which in bankruptcy matters is paramount to the state court, even though the state court may have acted before the bankruptcy court had acquired jurisdiction so to do.

The fifth point that the order was made without notice and therefore the act is unconstitutional, and the decree in pursuance thereof invalid, is not well taken. The purpose of the injunction is to hold matters in statu quo pending the decision of the bankruptcy court. The decision having been made without actual notice to the appellant, he was entitled to move to set the order aside, which he did, and this appeal is taken from the order made after the hearing of his application to set the decree aside.

The Supreme Court dealt with the question of notice in a case of involuntary bankruptcy in Hanover Nat. Bank v. Moyses, 186 U. S. 181, 22 S. Ct. 857, 862, 46 L. Ed. 1113, supra. It was contended by the appellant in that case that the discharge of the bankrupt was invalid because proper notice was not given. The court said:

"Notwithstanding these provisions, it is insisted that the want of notice of filing the petition is fatal because the adjudication per se entitles the bankrupt to a discharge, and that the proceedings in respect of discharge are in personam, and require personal service of notice. The adjudication does not in itself have that effect, and the first of these objections really rests on the ground that the notice provided for is unreasonably short, and the right to oppose discharge unreasonably restricted. * * * Nor is it possible to concede that personal service of notice of the application for a discharge is required.

"Proceedings in bankruptcy are, generally speaking, in the nature of proceedings in rem, as Mr. Justice Grier remarked in Shawhan v. Wherritt, 7 How. [627] 643, 12 L. Ed. [847] 854. And in New Lamp Chimney Co. v. Brass & Copper Company, 91 U. S. [656] 662, 23 L. Ed. [336] 339, it was ruled that a decree adjudging a corporation bankrupt is in the nature of a decree in rem as respects the status of the corporation."

In the case at bar, the sheriff's sale which was enjoined was to have been held the next day, and there was no opportunity for giving notice of the application for temporary injunction. 12 C. J. 1233, par. 988.

The basic question involved on this appeal is whether or not the District Court was authorized by law to take jurisdiction of the property of the petitioning debtor. We hold that it had such jurisdiction, and we are not concerned on this appeal with the manner in which the court exercises its authority.

Decree affirmed.