**In re PHILIBOSIAN (HAVERTY FURNITURE CO., Intervener).**

No. 22763.

District Court, N. D. Georgia, Atlanta Division.

Aug. 10, 1937.

Hamilton Lokey, of Atlanta, Ga., for movant.

Walter W. Aycock, of Atlanta, Ga., for debtor.

SIBLEY, Circuit Judge.

The certificate of the referee and his findings of fact show that the debtor, Philibosian, has scheduled no property except household furniture bought by him from Haverty Furniture Company, to which title was retained until fully paid for, at the rate of $30 per month. He defaulted in his payments, and Haverty Furniture Company, as it had the right to do under the contract, declared the whole indebtedness due and filed proceedings in a state court to foreclose the retention of title as a lien on the property. A week later the debtor filed his petition for extension under Bankruptcy Act § 74, as amended, 11 U.S.C.A. § 202, and proposed to pay $35 per month to be prorated among all his creditors till all were paid. About thirty-three months would be required, since he owes Haverty Furniture Company about $275 and fourteen other debts unsecured amounting to about $990. Nine of these unsecured creditors, being a majority in number and amount of all credi-

tors, accepted the proposal. Haverty Furniture Company, the only secured creditor, rejected it. Resisting confirmation of the proposal, Haverty Furniture Company formally pleaded that it, not the debtor, held title to the furniture; that the court had no right to control it; that confirmation of the proposal for extension, to which it did not consent, would take without due process of law its property rights in its security, to wit, the right to retake or to foreclose on the furniture and bring it to sale at a time chosen by itself and to bid on it, in that realization was delayed for nearly three years, although the furniture is perishable and not worth more than the debt. The prayer was that the court release the furniture and allow the foreclosure to proceed. The referee overruled these contentions and approved the proposal, although he found that the debtor was insolvent, that the Haverty Furniture Company had the property rights in the security which it claimed, and the furniture was not worth more than the unpaid purchase money, and that it would deteriorate if further used by the debtor. The monthly payment to Haverty Furniture Company under the extension proposal would be about $7.50. Haverty Furniture Company argues three points: (1) That, it being the holder of title under conditional sale, the debtor has no such interest as authorizes the court to take the property; (2) that secured creditors are a class separate from unsecured, and that the entire class of secured creditors rejected the proposed extension; (3) the provisions of section 74 are unconstitutional as against a nonconsenting secured creditor, on the authority of Louisville Bank v. Radford, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593, 97 A.L.R. 1106.

1. The Haverty Furniture Company has elected not to retake the furniture, but to treat its retention of title as a security for its debt. Foreclosure under the Georgia law will establish the amount of the debt, sell the furniture as the debtor's property, credit the proceeds of sale on the debt, and leave any balance still owing. By reason of the election to foreclose, the property is assets of the debtor, and Haverty Furniture Company is a secured creditor.

2. Section 74 in several places speaks of secured creditors in contrast with unsecured creditors. Subsection (e) (as amended, 11 U.S.C.A. § 202(e), which provides for creditors' action on an extension proposal before it can be filed for considera- tion by the court, requires that it be "accepted in writing by a majority in number of all creditors whose claims if unsecured have been allowed, or if secured are proposed to be affected by an extension proposal, which number must represent a majority in amount of such claims." Unsecured claims which have been allowed, and secured claims which will be affected, are thus mentioned. Whether a majority in number and amount of each class, or of both classes taken as one, is required, admits of some doubt. The latter construction was adopted in Re Sterba (C.C.A.) 74 F.(2d) 413, and is the more natural meaning of the words. But unreasonable results may occur in cases like this one. Where all the assets are incumbered to their full value, there is no equity for unsecured creditors. They have no prospect of realizing anything save as the debtor "may work himself out." Their interests coincide with his, and are opposed to the interests of the secured creditors. The unsecured creditors here voted to have the debtor retain the incumbered property for three years and use it, hoping to get something without contributing anything. If this construction would result in making the act unconstitutional, but the two-class construction would save it, the latter should be adopted. But then to classify all secured creditors together would be equally arbitrary, for their security might be very different both in nature as permanent or perishable, as likely to enhance or the reverse, or in amount as ample or insufficient. It is better to consider that all the creditors mentioned are to indicate their wish or judgment. If a majority in number and amount think the plan feasible and just to them and accept it, it goes to the court, who is to consider it and confirm it if satisfied on the points stated in subsection (g), 11 U.S.C.A. § 202 (g). The very first of the points is that "it includes an equitable and feasible method of liquidation for secured creditors." Subsection (h), 11 U.S.C.A. § 202(h), specifically says on this point that the proposal may "extend the time of payment of either or both unsecured debts and secured debts the security for which is in the actual or constructive possession of the debtor," and subsection (i), 11 U.S.C.A. § 202(i), declares it "shall not reduce the amount of or impair the lien of any secured creditor, but shall affect only the time and method of its liquidation." With the scope of the proposal as it affects a secured creditor thus narrowed to a mere question of time of liquidation, and with the delay left to the judgment of

the court as being "equitable," and in view of the provisions of subsection (*l*), 11 U.S. C.A. § 202(*l*), as to the results of failure to carry out the proposal, I think the one-class acceptance will not render the section unconstitutional.

3. Section 74 was upheld as within the bankruptcy powers of Congress and not lacking in due process in Re Landquist (C. C.A.) 70 F.(2d) 929. The ruling was repeated with reference to a conditional sale contract, as here, In re Victor, 70 F.(2d) 937, and again In re Sterba (C.C.A.) 74 F. (2d) 413. These decisions in the Seventh Circuit were followed in the Ninth in Collins v. Welsh (C.C.A.) 75 F.(2d) 894, 99 A.L.R. 1319. They were all made before the decision in Louisville Land Bank v. Radford, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593, 97 A.L.R. 1106. I think they are not discredited by it. The Radford Case dealt with an act which affected securities in a much more drastic way than section 74 does. The act there held unconstitutional has been since modified, and has been upheld. Wright v. Vinton Branch of Mountain Trust Bank, 57 S.Ct. 556, 81 L.Ed. ——.

■■ Under the bankruptcy power Congress has authority to impair the obligation of contracts, but may do so, as declared in the Radford Case, only when property is not, contrary to the Fifth Amendment, taken without due process of law. An unsecured note is property, whose value rests wholly in the debtor's obligation to pay it and in the right to seize his property to satisfy a judgment on the note. The holder may be deprived of this property by a process of bankruptcy resulting in the bankrupt's discharge without any payment, and due process of law is not lacking. A secured creditor has exactly the same property with the additional right to have the specified security exclusively applied to his debt. This last right is dignified with the name "vested right," but the Federal Constitution knows no such term and the Fifth Amendment speaks of "property" of all kinds. It is not clear to me that to deprive a secured creditor of his security through a bankruptcy deprives him of property any more than to deprive the unsecured creditor of his debt does; or that the process of bankruptcy is any less a due process of law in the one case than in the other. The true reason why bankruptcy may not nullify a security is not the Fifth Amendment but the fact that it never has. It lies in the limitations inherent in the bankruptcy power. The courts may

declare that to nullify a security is unprecedented in bankruptcy, and also so unreasonable as that it may be held not included in the grant of power to make uniform laws on the subject of bankruptcy. On the other hand, to delay realization on the security, especially when the security is ample and the secured creditor will realize his debt in full, or at least the full present value of the security, with compensation for the delay, and there are good reasons for the delay, all judged of by a court, is not unprecedented nor unreasonable, and is within bankruptcy power; just as it has always been within equitable power, though verging on the impairment of the obligation of the security contract. The provisions of section 74 which relate to secured creditors are in themselves valid, but the courts should take care in administering them that secured creditors are each treated "equitably."

■ I put no reliance on the fact that the furniture was apparently bought since section 74 was enacted. It is not within the province of Congress to regulate the sales of personal property in Georgia, or to fix rights incident to them. They are regulated by the laws of Georgia only. Congress may deal with those rights in case of bankruptcy as far as the bankruptcy power admits, both prospectively and retrospectively. But Congress cannot extend its power by announcing in advance what it proposes to do. Any other view would result in putting local business under the control of Congress without any warrant in the Constitution.

■ 4. Under the findings of the referee it is not equitable to take Haverty Furniture Company's security, in which there is no surplus value and the use of which does not appear to be indispensably necessary to the debtor's rehabilitation, and which will deteriorate by use, on the payment of $7.50 per month. This sum is but one-fourth of the monthly payments due under the contract, and it is not found to be sufficient to cover depreciation and interest if the payments should be discontinued. Indeed, the debtor has no apparent means of making payments. He has no other property, no business, and no salary. The situation renders it inequitable to this secured creditor to delay him as proposed. Unless further investigation shall develop a different situation, the extension plan as including this creditor ought to be rejected. The referee is directed to reopen the hearing for the purpose of considering whether the plan will be modified so as to apply to unsecured

790

creditors only, or whether there are facts not now apparent which will render it equitable to include Haverty Furniture Company.

Reversed for further hearing.